**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          jsmith@bursor.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA CASTRO, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| NIKE, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Lisa Castro ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.    This is a class action suit brought against Defendant Nike, Inc.'s ("Nike" or "Defendant") for aiding, abetting, condoning, or otherwise enabling the wiretapping the electronic communications of visitors to Nike's website, Nike.com (the "Website"),[1] by FullStory, Inc. ("FullStory").  The wiretaps, which are embedded in the computer code on the Website, are used by FullStory to secretly observe and record website visitors' keystrokes, mouse clicks,[2] and other electronic communications, including the entry of Personally Identifiable Information ("PII"), in real time and with users' consent.  By enabling such conduct, Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a)[iv].

2.    In October 2020, Ms. Castro visited the Website.  During the visits, FullStory—as enabled by Defendant—recorded Plaintiff's electronic communications in real time and without consent, including Plaintiff's mouse clicks, keystrokes, and payment card information.

3.    Plaintiff brings this action on behalf of herself and a class of all persons whose electronic communications were intercepted through the use of FullStory's wiretap on the Website.

## THE PARTIES

4.    Plaintiff Lisa Castro is a California citizen and resident who lives in Elk Grove, California.  Ms. Castro is domiciled and intends to remain in California.  In October 2020, prior to the filing of this lawsuit, Ms. Castro visited the Website and browsed the selection of apparel on the Website in order to later make an in-store purchase.  Ms. Castro was in Elk Grove when she visited the Website.  During the visit, Ms. Castro's keystrokes, mouse clicks, and other electronic communications were intercepted in real time and were disclosed to FullStory through the wiretap.

---

[1] NIKE, https://www.nike.com/.

[2] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe," and similar gestures used on touchscreen devices.

1    FullStory's conduct was aided, abetting, and otherwise enabled by Defendant Nike.  Ms. Castro was

2    unaware at the time that her keystrokes, mouse clicks, and other electronic communications,

3    including the information described above, were being intercepted in real-time and would be

4    disclosed to FullStory, nor did Ms. Castro consent to the same.

5         5.    Defendant Nike, Inc. is a company incorporated under the laws of Oregon with its

6    principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

7         6.    Nike does business throughout California and the entire United States.

8         7.    Nike owns and operates the Website.

9                        **JURISDICTION AND VENUE**

10        8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)

11   because this case is a class action where the aggregate claims of all members of the proposed class

12   are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the

13   proposed class is citizen of state different from at least one Defendant.

14        9.    This Court has personal jurisdiction over Defendant because Defendant has

15   purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiff's

16   claims arise out of Defendant's forum-related activities.  Furthermore, a substantial portion of the

17   events giving rise to Plaintiff's claims occurred in this District.

18        10.   Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a

19   substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this

20   District.

21        11.   Defendant purposefully directed its activities at California, and the wiretapping at

22   issue here arises from or relates to Defendant's activities.  As alleged more fully below, Defendant

23   intentionally installed the wiretap at issue here on the Website.  FullStory purposefully intercepted

24   electronic transmissions from users of Nike's website, and Nike purposefully aided and abetted

25   FullStory's conduct.  The conduct also was expressly aimed at California residents.  California is

26   the largest market in the United States—indeed, if California were its own nation, California would

27   have the fifth largest economy in the world.  Defendant knew that a significant number of

28   Californians would visit its website, because they form a significant portion of its customer base.

1    Indeed, Defendant's internal data shows that millions of California consumers visited the website,

2    and many if not all of them were recorded by FullStory.  By intercepting the transmissions of Nike

3    website users, Defendant targeted its wrongful conduct at customers, some of whom Defendant

4    knew, at least constructively, were residents of California.  It was foreseeable that Defendant's

5    interceptions and wiretapping would harm Plaintiff and similarly-situated individuals, and that at

6    least some of this harm would occur in California—where Defendant knew many customers and

7    prospective customers resided.  Finally, because there is wiretapping, there is jurisdiction over

8    Defendant.  *See Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021)

9    (noting that "[i]f [a website operator] were committing a tort like wiretapping, its acts might be

10   purposefully directed toward California customers and establish specific personal jurisdiction over

11   it").

12                                       **STATEMENT OF FACTS**

13   **I.      Overview Of The Wiretaps**

14          12.     FullStory develops a software of the same name that provides marketing analytics.

15          13.     One of FullStory's features is called "Session Replay."

16          14.     FullStory says that "Session replay tools capture things like mouse movements,

17   clicks, typing, scrolling, swiping, tapping, etc." on a given website.

18          15.     Session replay technologies work by using "embedded snippets of code … [that]

19   watch and record a visitor's every move on a website, in real time."[3]

20          16.     FullStory touts that Session Replay relies on real video of a user's interactions with a

21   website, or, in another words, a "recorded session."[4]

22          17.     To demonstrate how Session Replay works, FullStory displays the "recorded session

23   of a fictional user interacting with th[e] [Session Replay] Guide":

24

25

26   ───────────────

27   [3] Tomas Foltyn, *What's the Deal with Session-Replay Scripts?*, WELIVESECURITY, Apr. 20, 2018,
     https://www.welivesecurity.com/2018/04/20/whats-deal-session-replay-scripts/.

28   [4] https://www.fullstory.com/resources/the-definitive-guide-to-session-replay/.

18.   FullStory describes the above video as follows:

Here you can watch a FullStory session replay of a user—Daniel Falko—flipping through *The Definitive Guide to Session Replay*. **Notice how you can see interactions, mouse movements, clicks, interactions with overlays, and more**—and everything is listed in order in a stream at the right side of the replay. This is what a session replay looks like in the FullStory app.[5]



19.   FullStory's promotional video shows the behind-the-scenes features of the software. First, FullStory lets you view a list of users who visited the website, as well as the time they spent on the website:

---

[5] https://www.FullStory.com/resources/the-definitive-guide-to-session-replay/#finding-the-right-session-replay-tool (emphasis added).



20.     Upon clicking one of these "sessions," FullStory lets a company view the video of a user's interaction with a website, including mouse movements, clicks, interactions with overlays, keystrokes, geographic location, IP address, and more "to see the real customer experience behind the data":

21.     FullStory instructs prospective partners that "[t]he first step toward recording all in-browser interactions and making them available for pixel-perfect playback is deploying FullStory's recording JavaScript snippet.  Simply paste the snippet into the <head> element via your Content Management System (CMS), via your online store platform, or via your application's code."

22.     This snippet of code allows FullStory—as enabled by Nike—to record the keystrokes, mouse clicks, data entry, and other electronic communications of visitors to websites where the code is installed.  It also allows FullStory—as enabled by Nike—to track the amount of time spent on the website, geographic location of the visitor, and other information described above.

23.     FullStory's code is not a cookie at all, much less a run-of-the-mill cookie.  Common cookies that consumers might be familiar with do not engage in session recording or all of the features described above.  FullStory's code does far more than simply track where a visitor went on the internet, and its functionality is not limited to aggregate data.  Rather, as a 2017 study by Princeton University researchers—which specifically examined FullStory—noted, "unlike typical analytics services that provide aggregate statistics, these scripts are intended for the recording and playback of individual browsing sessions, as if someone is looking over your shoulder."

24.     When the website user's communications are transmitted to Nike's Website, FullStory records the website user's interactions locally in the user's browser in real time, and then transmits that information to FullStory's recording servers every few seconds.  FullStory then makes the information available to its clients.

25.     FullStory not only records users' electronic communications in real time for later viewing, but also allows websites to monitor them *live*.  "For sessions that are actively recording and we are still receiving events from a user (meaning the last page in their session is still open), you'll see a 'Go Live' button at the end of the playback bar.  Once you click on the button, you'll essentially be riding along in near real time with the user with no need to refresh the playback."

26.     The 2017 study by Princeton University researchers shows this process in action.  In the first screenshot below, a mock user visits a website and enters information:

//

//

27.     In the second screenshot, one can see FullStory's dashboard.[6]  The information is simultaneously recorded by FullStory, and less than a second later, the user's actions can be seen in FullStory's recording:

//

//

_____

[6] These two images are displayed side-by-side in the study.  Plaintiff has separated the two images so that they can be made larger for clarity.



28.     The "Go Live" feature is always available as long as a user's website session is active, meaning FullStory is always recording a user's interactions with a website in real time, regardless of whether the video is viewed in real time.

29.     FullStory's recording is not limited to desktop website, but also mobile websites and mobile applications.[7]

---

[7] https://www.fullstory.com/mobile-apps/.

30.     Technology like FullStory's Session Replay feature is not only highly intrusive, but dangerous.  The 2017 study by Princeton University researchers found that session recording technologies were collecting sensitive user information such as passwords and credit card numbers. The research notes that this wasn't simply the result of a bug, but rather insecure practices.  Thus, session recording technologies such as FullStory's can leave users vulnerable to data leaks and the harm resulting therefrom.

31.     FullStory's business model involves entering into voluntary partnerships with various companies and providing their software to their partners.

32.     One of FullStory's partners is Defendant Nike.

33.     Nike utilizes FullStory's software on the Website.

34.     Nike knows that FullStory's software captures the keystrokes, mouse clicks and other communications of visitors to its website, and pays FullStory to supply that information.

35.     Pursuant to an agreement with FullStory, Nike enabled FullStory's software by voluntarily embedding FullStory's software code on the Website.

36.     As currently deployed, FullStory's software, as employed by Nike, functions as a wiretap.

**II.    Defendant Wiretapped Plaintiff's Electronic Communications**

37.     In October 2020, Ms. Castro visited Nike.com and browsed the selection of apparel on the Website.

38.     During those visits, and upon information and belief, the Session Replay feature in FullStory's software created a video capturing each of Plaintiff's keystrokes and mouse clicks on the website.  The FullStory wiretap also captured the date and time of the visits, the duration of the visits, Plaintiff's IP addresses, their location at the time of the visits, their browser types, and the operating system on their devices.

39.     FullStory's recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with the Website.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    9

40.     When users access the Website and make a purchase, they enter their PII. FullStory's software captures these electronic communications throughout each step of the process. Even if users do not complete the form, the Website nonetheless captures users' electronic communications throughout his or her visit.

41.     On Nike's website, FullStory's software captures, among other things:

      (a) The user's mouse clicks;

      (b) The user's keystrokes;

      (c) The user's payment card information, including card number, expiration date, and CVV code;

      (d) The user's IP address;

      (e) The user's location at the time of the visit; and

      (f) The user's browser type and the operating system on their devices.

42.     Crucially, Defendant Nike does not ask users, including Plaintiff, whether they consent to being wiretapped by FullStory.  Users are never told that their electronic communications are being wiretapped by FullStory.

43.     Nike's Privacy Policy did not disclose the wiretapping for two reasons.  First, to the extent Nike's home page contained a link to the Privacy Policy, it was buried at the very bottom of the webpage in tiny, 7.5 non-contrasting font that was designed to be unobtrusive and easy to overlook.  Further, even though users are presented with a hyperlink to Nike's Privacy Policy at the checkout process, FullStory began recording users long before this moment, *i.e.*, any purported disclosure was made *after* the wiretap had already begun.

44.     Moreover, users are not on notice of the hyperlink to the Privacy Policy when they click the "Place Order" button.

45.     Second, even if users do agree to the Privacy Policy by using the Website or otherwise—and they do not for the reasons stated above—Nike does not mention FullStory or its Session Replay feature in Nike's Privacy Policy.  At best, the Privacy Policy discusses Nike's use of "Cookies and Pixel Tags" to collect information, *not* that users are actively having their website sessions recorded in real time.  Indeed, unlike Nike, other companies actively disclose the use of

session recording technology on their websites by implementing a pop-up screen that a user must acknowledge before advancing further on the website.  That practice goes to show that companies know how to disclose the use of session recording technology when they want to.

46.     Further, Nike states in its Privacy Policy that *Nike may* use "cookies and pixel trackers" to collect "click behavior."  But this does not disclose the wiretapping for several reasons. First, Nike only discloses that it—and not a third party—may collect "click behavior."  Second, disclosing that Nike has the *capacity* to monitor certain information is not the same as disclosing that it *does in fact* collect mouse clicks, keystrokes, and other communications in real time.  And third, a reasonable consumer might suspect that Nike keeps track of what that consumer purchases after the fact for marketing purposes.  But a reasonable consumer would *not* expect to have their mouse clicks, keystrokes, and other communications monitored by a third party in real time and conglomerated into a video recording, whether or not that user made a purchase.  Indeed, as the 2017 Princeton University study researchers recognized, "the extent of data collected by these services **far exceeds user expectations** [1]; text typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user. This data can't reasonably be expected to be kept anonymous."

47.     For these reasons and more, users do not agree to be wiretapped even if they agree to the Privacy Policy.

48.     Neither Plaintiff nor any Class member consented to being wiretapped on the Website, nor to have their communications recorded and shared with FullStory.  Any purported consent that was obtained was ineffective because (i) the wiretapping began from the moment Plaintiff and Class members accessed the Website; (ii) the Privacy Policy did not disclose the wiretapping or FullStory; and (iii) the hyperlink to the Privacy Policy is inconspicuous and therefore insufficient to provide notice.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff seeks to represent a class of all California residents who visited the Website, and whose electronic communications were intercepted or recorded by FullStory.  Plaintiff reserves

1  the right to modify the class definition as appropriate based on further investigation and discovery

2  obtained in the case.

3      50.    Members of the Class are so numerous that their individual joinder herein is

4  impracticable.  On information and belief, members of the Class number in the thousands.  The

5  precise number of Class members and their identities are unknown to Plaintiff at this time but may

6  be determined through discovery.  Class members may be notified of the pendency of this action by

7  mail and/or publication through the distribution records of Defendant.

8      51.    Common questions of law and fact exist as to all Class members and predominate

9  over questions affecting only individual Class members.  Common legal and factual questions

10  include, but are not limited to, whether Defendant has violated the California Invasion of Privacy

11  Act ("CIPA"), Cal. Penal Code § 631; and whether class members are entitled to actual and/or

12  statutory damages for the aforementioned violations.

13      52.    The claims of the named Plaintiff are typical of the claims of the Class because the

14  named Plaintiff, like all other class members, visited the Website and had her electronic

15  communications intercepted and disclosed to FullStory—as enabled by Nike—through the use of

16  FullStory's wiretaps.

17      53.    Plaintiff is an adequate representative of the Class because her interests do not

18  conflict with the interests of the Class members she seeks to represent, she has retained competent

19  counsel experienced in prosecuting class actions, and she intends to prosecute this action

20  vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and

21  her counsel.

22      54.    The class mechanism is superior to other available means for the fair and efficient

23  adjudication of the claims of Class members.  Each individual Class member may lack the resources

24  to undergo the burden and expense of individual prosecution of the complex and extensive litigation

25  necessary to establish Defendant's liability.  Individualized litigation increases the delay and

26  expense to all parties and multiplies the burden on the judicial system presented by the complex

27  legal and factual issues of this case.  Individualized litigation also presents a potential for

28  inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

55.     Plaintiff brings all claims in this action individually and on behalf of members of the Class against Defendant.

<div align="center">

**COUNT I**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 631**

</div>

56.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

57.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

58.     To establish liability under section 631(a), Plaintiff need only establish that Defendant, "by means of any machine, instrument, contrivance, or in any other manner," did any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> *Or*

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

> *Or*

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

> *Or*

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

59.     Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email.  *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

60.     FullStory's software, including its Session Replay feature, is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

61.     At all relevant times, by using its technology, FullStory—as enabled by Defendant Nike—intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and Class members on the one hand, and Nike's Website on the other hand.  *Saleh v. Nike, Inc.*, --- F. Supp. 3d ---, 2021 WL 4437734, at *11 (C.D. Cal. Sept. 27, 2021) ("Viewing the allegations as true and accepting all reasonable inferences in favor of Plaintiff, Saleh pleads sufficient facts regarding FullStory's conduct to state a claim for violation of § 631(a).").

62.     At all relevant times, by using its technology, Fullstory—as enabled by Nike—willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative Class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.  *Saleh*, 2021 WL 4437734, at *11 ("Viewing the allegations as true and accepting all reasonable inferences in favor of Plaintiff, Saleh pleads sufficient facts regarding FullStory's conduct to state a claim for violation of § 631(a).").

63.     As FullStory notes on its website, "When an end user session is recorded by the FullStory script, FullStory starts by recording event data locally in the browser. Every few seconds,

1  this local event data is packaged up and sent to FullStory recording servers in the form of bundles."

2  Such local recording is plainly occurring in real-time, and is, at worst, "transitory electronic

3  storage" that is "part of the overall transmission process," which has been held to constitute

4  communications "in transit."

5         64.    Indeed, FullStory offers website operators the ability to "Go Live" with currently

6  active website sessions (*i.e.*, users still have the website open on their browser), which would not be

7  possible if FullStory was not recording users in real time.

8         65.    At all relevant times, FullStory—as enabled by Defendant Nike—intercepted the

9  "content" of Plaintiff's communications.  *Saleh*, 2021 WL 4437734, at *9 ("Plaintiff has met his

10  burden to allege facts plausibly showing Defendants recorded Plaintiff's content communications

11  with Nike by recording, among other things, keystrokes and a video of Plaintiff's interactions with

12  Nike's website.").

13         66.    Defendant Nike aided, agreed with, and conspired with FullStory to implement

14  FullStory's technology and to accomplish the wrongful conduct at issue here.  In addition, Nike

15  employed FullStory to accomplish the wrongful conduct at issue here.  *Saleh*, 2021 WL 4437734, at

16  *11 ("[T]he court will not dismiss Count 1 against Nike for allegedly aiding, agreeing, or conspiring

17  with FullStory to provide FullStory with Plaintiff's communications with Nike.").

18         67.    Plaintiff and Class members did not consent to any of Defendant's actions in

19  implementing FullStory's wiretaps on the Website.  Nor have Plaintiff nor Class Members

20  consented to FullStory's intentional access, interception, reading, learning, recording, and collection

21  of Plaintiff's and Class Members' electronic communications—as enabled by Defendant Nike.

22         68.    The violation of section 631(a) constitutes an invasion of privacy sufficient to confer

23  Article III standing.

24         69.    Plaintiff and Class members seek all relief available under Cal. Penal Code § 637.2,

25  including injunctive relief and statutory damages of $5,000 per violation.

26         70.    Identical allegations have already been sustained in another lawsuit against

27  Defendant.  *See generally Saleh*, 2021 WL 4437734, at *7-12.

28

1

## **PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek

3 judgment against Defendant, as follows:

4      (a)   For an order certifying the Class under Rule 23, naming Plaintiff as the

5            representative of the Class, and naming Plaintiff's attorneys as Class

6            Counsel to represent the Class;

7      (b)   For an order declaring that the Defendant's conduct violates the statutes

8            referenced herein;

9      (c)   For an order finding in favor of Plaintiff and the Class on all counts

10            asserted herein;

11      (d)   For compensatory, punitive, and statutory damages in amounts to be

12            determined by the Court and/or jury;

13      (e)   For prejudgment interest on all amounts awarded;

14      (f)   For an order of restitution and all other forms of equitable monetary relief;

15      (g)   For injunctive relief as pleaded or as the Court may deem proper; and

16      (h)   For an order awarding Plaintiff and the Class their reasonable attorneys'

17            fees and expenses and costs of suit.

18

## **DEMAND FOR TRIAL BY JURY**

19      Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

20 issues so triable.

21

22 Dated:  September 30, 2021              Respectfully submitted,

23                                        **BURSOR & FISHER, P.A.**

24                                        By:   */s/ Joel D. Smith*_____
                                                Joel D. Smith

25
                                          L. Timothy Fisher (State Bar No. 191626)
26                                        Joel D. Smith (State Bar No. 244902)
                                          1990 North California Boulevard, Suite 940
27                                        Walnut Creek, CA 94596
                                          Telephone: (925) 300-4455
28

Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
jsmith@bursor.com

*Attorneys for Plaintiff*